OPINION OF THE COURT
Herbert Kramer, J.
Is expert testimony essential to the establishment of a claim of negligence based upon the faulty design of a ramp?
*884 Plaintiff slipped and fell while walking down a ramp as she was leaving defendant’s grocery store. Plaintiff attributes the accident to the fact that the carpeted ramp was slippery and had too steep a slope. Plaintiff asserts that the rug did not cover the entire length of the ramp and claims that her foot twisted because of the difference in friction between the back of her foot which was on the rug and the front which had reached the concrete. Defendant moved for summary judgment essentially arguing that friction coefficients that cause slippery conditions are not actionable and that there was no other claim of defect in the rug or the surface of the ramp. Plaintiff responded arguing that the ramp was inherently dangerous because in her estimation the ramp sloped at an angle of 30 degrees at the place where she fell.
A floor surface that is slippery because of the friction coefficient associated with its natural surface qualities is not actionable. (Palermo v Roman Catholic Diocese of Brooklyn, N.Y., 20 AD3d 516 [2d Dept 2005].) Thus, plaintiffs claim can survive summary judgment only if plaintiff can demonstrate that the ramp was inherently dangerous because of the degree of its slope. The difficulty with plaintiffs claim is that she did not call upon an expert to determine the precise slope of the ramp, but instead relied upon her own guestimate of the measurement. Nor did she submit expert testimony on the question of whether this ramp was inherently unsafe based on good and accepted engineering practices, the date of construction and the applicable New York City Administrative Code provisions. Thus, the question presented is whether lay testimony can establish the degree of slope of a ramp and whether the slope is unsafe.
Interestingly, this appears to be a question of first impression in this state. However, other jurisdictions have considered this issue, albeit in somewhat different postures. Initially, this court finds that the appropriate inquiry and analysis for the resolution of this issue is set forth in a Connecticut case in which the plaintiff died as a result of snowboarding from a snow ramp. The Connecticut court opined that
“[u]nder some circumstances, expert testimony is required to support a cause of action. These circumstances exist when the factual issues are ‘beyond the field of ordinary knowledge and experience’ of the average trier-of-fact. . . .
“The elements of negligence which a plaintiff must prove are the presence of a duty of care, breach of *885 that duty, causation, and actual injury. If the determinations of the standard of care pertinent to a given situation and/or whether that standard was satisfied necessitates information beyond the ken of ordinary fact finders, expert testimony is required to prove negligence.” (MacDonald v Ski Sundown, Inc., 2005 WL 1089154, *1, 2005 Conn Super LEXIS 899, *2-3 [2005] [citations omitted].)
The MacDonald court held that the safe construction or maintenance of a snow ramp falls outside the knowledge and experience of the average trier of fact.
Here, in New York, we recognize, of course, that there exists a distinction between those circumstances that may be readily discernible by a jury using common knowledge and those which require professional expertise. Thus, in the medical malpractice context, the failure to raise the side rails of a hospital bed or the failure to inspect and discover an inflammable substance which had been spilled on a sheet and allowed to remain during an operative procedure were deemed to be proper subjects of lay testimony while the departure from the operative standards of care applicable to a professional were held to require the specialized knowledge of an expert. (Coursen v New York Hosp. Cornell Med. Ctr., 114 AD2d 254 [1st Dept 1986].) And in a nonmedical malpractice context, it was held that an expert’s testimony was not needed to establish the commonly known fact that a person’s foot will slide when stepping on dried cement, sand and gravel. (Vispetto v Bassuk, 41 AD2d 958 [2d Dept 1973].)
When it comes to ramp safety, however, a Pennsylvania court has held that even the facts upon which the expert’s conclusions were grounded must be expertly gathered. (Hancock v Albert Einstein Med. Ctr., 23 Phila County Rptr 41 [Pa Ct Com Pl 1991].) In Hancock, plaintiff tripped and fell while walking on a ramp. At trial, the plaintiff called an engineering expert who inspected the accident scene five years after the fact and consequently the only evidence with respect to the ramp’s condition at the time of the accident came from the plaintiff herself. The court opined that the plaintiff
“who claims no expertise regarding paints, surfacing or ramps . . . could only say that the ramp appeared smooth and was slippery . . . She could not testify what the ramp coating was composed of, nor did she state its slope . . . Clearly [the plaintiffs] testimony was not sufficient foundation upon which *886 expert testimony could rest.” (Id. at 43.)
In New York, a defendant was taken by surprise on trial when the plaintiff introduced expert testimony to the effect that the ramp gradient was too steep — a matter not alleged in the bill of particulars. Defendant did not introduce expert testimony and the Court opined that “had the alleged excessive steepness of the incline and the need for handrails urged at trial been delineated in the bill of particulars, the probability is overwhelming that, given the technical nature and scope of such matters, defendants would have produced their own expert” and concluded that the “defendants were misled and suffered prejudice when plaintiffs were permitted to offer proof of negligence beyond the confines of their particulars and there should be a new trial.” (Sharkey v Locust Val. Mar., 96 AD2d 1093, 1095 [2d Dept 1983].)
The decision in Sharkey makes it abundantly clear that insofar as concerns the issue before us today, the principles articulated in the sister state cases cited above are not bounded by state lines but should be applied with equal force to the circumstances at bar.
This court therefore holds that the plaintiff is not an engineering expert and cannot provide factual information as to the slope of the ramp and the safety ramifications outcome from same so as to demonstrate that the ramp was so sharply sloped that it breached the applicable standard of care.* In the absence of expert testimony to that effect, plaintiff is unable to successfully oppose summary judgment.
Accordingly, the defendant’s motion for summary judgment is granted and the complaint is dismissed.

 For example, Administrative Code of the City of NY § 27-377 discusses the gradient of a ramp in terms of its slope and provides that “(b) • • • Ramps shall not have a slope steeper than 1 in 8, except that in buildings classified in occupancy group H the slope shall not exceed 1 in 12 . . . .” Slope is not expressed in degrees but rather as a gradient fraction that divides the length of a ramp by the height that it rises. Thus, although plaintiff testified that she worked as a math teacher in her native Russia and her science and math background may have afforded her a better than average opportunity to discuss degrees of angles and friction coefficients, she did not provide a calculation of the slope of the ramp nor did she testify as to the age of the building which would in turn determine the applicability of the Code provision. Indeed, she claimed no expertise in the area of engineering or building.